**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICKY L. FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23 C 16665 |
| | ) | |
| SGT. DAY, SGT. WILLIAMSON, and | ) | |
| SHERIFF TOM DART, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Ricky L. Fisher was detained at the Cook County Jail in 2023. His sheets and blanket were soiled by soot, and he discarded his sheets. He requested clean bedding from Sergeants Day and Williamson, two officers who worked on his unit, and they called the linens department with this request each time they spoke with Fisher. After lacking clean bedding for about three months, Fisher filed this pro se lawsuit. The defendants have moved for summary judgment. For the reasons below, the Court grants the motion.

**Background**

The Court takes the facts from the defendants' Local Rule 56.1 statement, unless otherwise noted. Fisher does not dispute any of the facts in that statement. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 4 ("My statement is the same as the defense statement of material facts[.]").

Fisher was detained awaiting trial at the Cook County Jail in September 2023

when his blanket and sheets became wet and soiled with soot. He moved to protective custody around this time. First, he moved from Division 9 to Division 5, discarding one soiled sheet and bringing a wet, soiled sheet and blanket. He resided in Division 5 for less than twenty-four hours. He was then transferred to Division 6, and he brought the soiled sheet and blanket with him.

The next day, the laundry unit came for a "sheet exchange," which occurred each week. His cellmate handed over a sheet torn into two portions and received two sheets in return. Fisher then tried to exchange his soiled sheet for a fresh one, but he was told that his cellmate had already been given two sheets, one of which he should use. In total, Fisher and his cellmate had three sheets. Two were apparently used by his cellmate, and one was placed around the toilet as a curtain.

During a cell search that week, Fisher told Sergeant Williamson about his lack of proper bedding. Sergeant Williamson told him to dispose of his dirty sheet and blanket, and she called "sanitation" to obtain new bedding for Fisher. Defs.' L.R. 56.1 Stmt. ¶ 27. Fisher threw away his dirty sheet but kept the blanket.

The next time the laundry unit came to Fisher's cell, he asked for new sheets. He was told he had to trade in old sheets for new ones, and since he had thrown out his soiled sheets, he could not do so. Again, Fisher told Sergeant Williamson, who placed a call attempting to resolve the issue. Fisher told Sergeant Williamson about the issue once or twice per week from September to December 2023. Sergeant Williamson called "sanitation and linens 'every time'" Fisher said he needed new bedding.[1] *Id.* ¶ 32.

---

[1] The defendants' statement of material facts does not make clear if sanitation and linens are one department or two distinct departments at the Cook County Jail, but in

2

Fisher encountered Sergeant Day at most three times per week when he went to receive medical care.  He repeatedly told her that he needed new bedding.  She, too, called sanitation each time Fisher made this request.

From September to December 2023, Fisher requested new bedding from the laundry unit workers each week when they came to his cell.  He was consistently told that he needed to turn in his sheets to get new bedding.  He also filed grievances about his lack of proper bedding.  Fisher described the temperature in the unit during part of this time as "freezing cold[.]"  Pl.'s Resp. to Defs.' Mot. for Summ. J. at 14.

In December 2024, an officer from the linens department finally gave Fisher bedding, over one hundred days after his sheets were soiled.  That officer said that he had not heard of Fisher's issue despite the calls to his department from Sergeants Williamson and Day.  Fisher alleges that Sergeants Williamson and Day should have called this officer directly.

Fisher explains that as a result of his lack of bedding, he suffered rashes that left him with marks or scars, exposure to cold temperatures, and mental health issues.  He sought medical treatment for the rashes.  Fisher is still bothered by the appearance of the marks.

In December 2023, Fisher filed this suit against the Cook County Department of Corrections and its staff, which the Court screened under 28 U.S.C. § 1915A.  The Court dismissed Fisher's complaint for failure to name a specific, suable defendant. Dkt. 5 at 3.  In February 2024, Fisher filed an amended complaint against Sergeants

---

any case, the parties agree that "sanitation and linens" were responsible for providing bedding to detainees.  *Id.* ¶ 32.

Day and Williamson, as well as several John and Jane Doe officers. On screening the amended complaint, the Court added Cook County Sheriff Tom Dart as a nominal defendant to allow Fisher to conduct discovery and ascertain the identity of the unnamed officers. Dkt. 9 at 3. The Court permitted Fisher to bring a Fourteenth Amendment conditions of confinement claim under 42 U.S.C. § 1983, as well as state law claims for intentional infliction of emotional distress and negligence. *Id.* at 2. The Court dismissed Fisher's other claims. *Id.* at 3. Fisher never sought to name or add any other defendants.

After the parties completed discovery, in January 2026, the defendants moved for summary judgment and to dismiss Sheriff Dart.

**Discussion**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if, after drawing all reasonable inferences from the record in favor of the nonmoving party, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of establishing that there is no genuine dispute regarding a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the party that bears the ultimate burden of persuasion at trial must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). If the party with the burden of persuasion

4

cannot show that each essential element of its claim or defense is factually supported, summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 323–24.

## A.     Conditions of confinement

Unlike a convicted prisoner, whose constitutional rights regarding conditions of confinement are established by the Eighth Amendment, a pretrial detainee is protected by the Due Process Clause of the Fourteenth Amendment. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). Whereas a convicted prisoner has the right to be free only "from conditions that constitute *cruel and unusual* punishment," a pretrial detainee is "entitled to be free from conditions that amount to punishment" of any kind. *Id.* (cleaned up) (emphasis added).

To show that the challenged conditions amount to punishment, a pretrial detainee must establish that (1) the conditions are "objectively serious enough to amount to . . . the denial of a basic human need," *id.*, (2) defendants "possess a purposeful, a knowing, or possibly a reckless state of mind[,]" and (3) defendants' actions are "objectively unreasonable," *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring in judgment) (noting the same three-part test from *Kingsley*). Although *Kingsley* was an excessive force case, the Seventh Circuit applies this test to conditions-of-confinement claims. *See, e.g.*, *Hardeman*, 933 F.3d at 823 (majority opinion) ("*Kingsley*'s objective inquiry applies to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees."). To avoid summary judgment, Fisher must show that there are genuine disputes of material fact with respect to all three elements.

The Court's analysis begins and ends with the last element. Addressing the last

element, *Kingsley* explained that "a pretrial detainee can prevail by providing . . . objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398; *see also Hardeman*, 933 F.3d at 824. As the word "objective" indicates, courts approach the inquiry "from the perspective of a reasonable officer on the scene[.]" *Kingsley*, 576 U.S. at 397. "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained[.]'" *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 540 (1979)).

The Seventh Circuit has elaborated on how to evaluate whether a defendant acts in an objectively reasonable manner. "In the excessive-force context, 'objective' factors informing this determination include 'the relationship between the need for the use of force and the amount of force used' and 'the threat reasonably perceived by the officer.'" *Pittman by & through Hamilton v. Madison County*, 108 F.4th 561, 570 (7th Cir. 2024) (quoting *Kingsley*, 576 U.S. at 397), *cert. denied*, 145 S. Ct. 1154 (2025). Similarly, "[t]he objective reasonableness of a decision to deny medical care . . . turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.*

In this case, the record would not permit a reasonable jury to find that Sergeant Day or Sergeant Williamson acted objectively unreasonably by calling the linens and/or sanitation department to pass along Fisher's concerns. From the standpoint of a reasonable officer, these officers tried to solve the issue by contacting the linens department, which provides bedding to prisoners. Fisher ultimately received new

6

sheets and blankets from an officer from that same department, which validates Sergeants Day and Williamson's decisions to call there. Fisher correctly notes that Sergeants Day and Williamson could have taken different courses of action, perhaps by physically going to the linen department to speak with staff there; requiring Fisher's cellmate to give him one or two of the three sheets in their cell; or monitoring the laundry exchanges that took place weekly to ensure that Fisher received bedding. But the fact that the officers conceivably could have taken other steps does not mean they behaved objectively unreasonably. The linens department visited the unit weekly to provide clean bedding, and there is no evidence in the record to suggest that the department was dysfunctional or inoperative. The officers passed on Fisher's concerns to that department and reasonably expected that someone in that department would address those concerns. Their actions were rationally related to a legitimate governmental objective. No reasonable jury could find that the officers' actions were objectively unreasonable.

Fisher may well have experienced an objectively unreasonable *deprivation*, which is the first element of his claim. *See, e.g.*, *Hardeman*, 933 F.3d at 820 (holding that prisons must provide "reasonably adequate . . . bedding" (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016))). But he must offer evidence that would permit a reasonable jury to find in his favor on *all three* elements of his conditions-of-confinement claim. As the Court has discussed, no reasonable jury could find in his favor on the third element. The defendants are therefore entitled to summary judgment. The Court need not address the defendants' remaining arguments for summary judgment on

7

Fisher's section 1983 claim.[2]

## B.      Intentional infliction of emotional distress and negligence

Fisher also brings related claims against the defendants under state law for

negligence and intentional infliction of emotional distress.  The defendants seek

summary judgment, arguing that Fisher has failed to show a genuine dispute on the

merits and that they are immune from suit under the Illinois Tort Immunity Act, 745 Ill.

Comp. Stat. Ann. 10/1-101 *et seq.*

The Illinois Tort Immunity Act provides that "[a] public employee is not liable for

his act or omission in the execution or enforcement of any law unless such act or

omission constitutes willful and wanton conduct."  745 Ill. Comp. Stat. Ann. 10/2-202.

Willful and wanton conduct is "a course of action which shows an actual or deliberate

intention to cause harm or which, if not intentional, shows an utter indifference to or

conscious disregard for the safety of others or their property."  745 Ill. Comp. Stat. Ann.

10/1-210.  "Wil[l]ful and wanton conduct, as contemplated in [the Tort Immunity Act],

---

[2] The Court also need not address Fisher's other arguments that are unrelated to the third element of his section 1983 claim.  But it will do so briefly for his benefit.  Fisher seeks video evidence from the unit where these events took place.  But the Cook County Department of Corrections no longer retains footage from the relevant period, and Fisher did not, during the period for discovery, raise any concerns to the Court regarding the defendants' failure to produce surveillance footage.  Fisher also appears to assert claims of inadequate medical care for his skin conditions.  But his complaint did not plead claims on this topic, and he cannot raise new claims, particularly against new defendants, in a response to a motion for summary judgment.  Finally, Fisher points to bedding assignment logs that show that he did not receive linens or blankets during the relevant period.  The defendants do not dispute this, and the records support that he may have suffered an objectively unreasonable deprivation.  But Sergeants Day and Williamson were not the officers who exchanged linens on his unit.  In any case, as the Court has explained, he also must provide evidence that would permit a reasonable jury to find that Sergeants Day and Williamson acted unreasonably, which he has not done.

consists of more than mere inadvertence, incompetence, or unskillfulness." *McDowell v. Village of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014) (quoting *Geimer v. Chi. Park Dist.*, 272 Ill. App. 3d 629, 637, 650 N.E.2d 585, 592 (1995)).

No reasonable jury could find that Sergeant Day or Sergeant Williamson acted in a willful and wanton manner. They each spoke to Fisher regularly about his lack of clean linen and placed calls after or during each conversation to the department in charge of bedding. There is no evidence in the record that would permit a finding that either officer had an intention to cause harm. Nor is there evidence reflecting "utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. Ann. 10/1-210. The officers attended to Fisher's concerns through phone calls and messages, although that strategy was evidently unsuccessful in resolving the issue. "The question of whether [a] defendant is liable for willful and wanton behavior is ordinarily a question for the jury." *Geimer*, 272 Ill. App. 3d at 637, 650 N.E.2d at 592. But even viewing the evidence in the light most favorable to Fisher, no reasonable jury could find that Sergeants Day and Williamson behaved in a willful and wanton manner.

Additionally, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 Ill. Comp. Stat. Ann. 10/2-204. Sergeants Day and Williamson called the linen and sanitation department regularly; under Illinois law, they are not responsible for the failure of the individuals in that department to respond appropriately and ensure that Fisher received clean linens.

Because there is no genuine factual dispute that Sergeants Day and Williamson are entitled to immunity under the Illinois Tort Immunity Act, the Court need not address

their arguments on the merits of Fisher's state law claims.

## C.     Sheriff Dart

The defendants also ask the Court to dismiss Sheriff Dart.  Sheriff Dart was added by the Court to this case "as a nominal Defendant for the purposes of Plaintiff conducting discovery as to the identity of" several unnamed officers "involved in the alleged denial of clean linens[.]"  Dkt. 9 at 3; *see Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 459 (7th Cir. 2018) (explaining that "nominal parties" are "nothing more than placeholders 'in the event that during discovery [the plaintiff] identifie[s] any additional defendants he wishe[s] to add to the suit.'" (quoting *Moore v. Gen. Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996))).  The Court instructed Fisher to send interrogatories to defense counsel seeking to identify the unnamed officers and, once he had identified the names of these officers, submit a second amended complaint including the new officer defendants "as soon as possible in light of the two-year statute of limitations and applicable tolling rules."  Dkt. 9 at 3.

Written discovery was completed in 2024, and depositions were completed by the end of October 2025.  Fisher has not sought to amend his complaint.  He has not identified by name any officers allegedly involved in depriving him of clean linens other than Sergeants Day and Williamson.  The two-year statute of limitations for Fisher's claims has now passed, so in any case, amendment at this stage would be improper. See *Wallace v. Kato,* 549 U.S. 384, 387 (2007) (explaining that the statute of limitations for claims under 42 U.S.C. § 1983 comes from the statute of limitations for personal injury torts in the state in which the cause of action arose); 735 Ill. Comp. Stat. Ann. 5/13-202 (providing for a two-year statute of limitations for personal injury torts in

10

Illinois). Sheriff Dart must be dismissed from this matter.

## Conclusion

For the reasons stated above, the Court dismisses Sheriff Dart and grants the defendants' motion for summary judgment [dkt. 75]. The Court directs the Clerk to enter judgment stating: Judgment is entered in favor of the defendants and against the plaintiff. The Clerk is directed to mail a copy of this order to: Ricky L. Fisher, Y-63967, Dixon Correctional Center, 2600 North Brinton Avenue, PO Box 1200, Dixon, Illinois 61021.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 29, 2026

11